In the case of Swiddler vs. Hilliard and Brooks,
Evans J.
delivered the opinion of the court as follows.
The first ground in the notice cannot be sustained. One who does not usually exercise the employment of carrying goods for hire, but only in a single instance does so, will incur no responsibility beyond that of an ordinary bailee for hire, and will not be answerable for any loss, by means against which he could not have guarded by ordinary diligence. But in addition to this stipulation for diligence, *303 arising from his undertaking to carry goods, a common carrier is, by law, an insurer of all goods committed to his charge, against all losses except those which arise from the acts of public enemies, or such causes as could not happen by the intervention of man — as storms, lightnings and tempests. The evidence, we think, puts the defendants in this position. They were public carriers for hire— that was their employment; and they must take the risks and incur the liabilities of their station, unless they are exempted by their contract, of which the bill of lading is evidence. Three questions have been argued in this court.
1. Can a common carrier limit his liability by a special agreement.
2. How far is the liability limited, in this case, by the bill of lading.
3. On whom does the law cast the burthen of proof.
These I will consider in their order.
It would seem, from the authorities cited in the argument of this case, that a carrier cannot, by notice, and of course by agreement, divest himself of his liability for negligence or want of care ; and it would seem, from the recent cases of Hollister vs. Nowlen, 19 Wend. 234, and Cole vs. Goodwin & Story, 19. Wend. 251, that in New York a carrier is not. allowed, by a special agreement, to lessen the liabilities ijvhich the common law attaches to his employment. But I think, notwithstanding what is said in those cases, the contrary opinion has prevailed in England for many years pasC — that it is the acknowledged law in most of the American States, and is recognized in this State in the case of Patton vs. Magrath & Brooks, Dud. 159. I am wholly unable to see any reason why, on this, as on most other subjects, men may not be left to take care of their own interests. There is no difference of opinion in the court, and I deem it unnecessary to say more on the subject.
The next question is, to what extent have the defendants limited their liability at common law, by their bill of lading," which, being produced in evidence by the plaintiff, must be taken as the contract of the parties. The *304 words are “ dangers of fire and navigation only excepted.” What does the word “fire,” taken in this connection mean? Does it mean fire from lightning, or fire originating from the steamboat furnace, or fire in its most comprehensive sense ? In general, I would say that where a word is inserted in a contract, by way of limiting a liability, something more was meant than that which, by law, was already exempted; and if we restrict the term to fire from lightning, or mere physical agency, the insertion of it in this bill of lading was wholly unnecessary — because, by law, the carrier is not liable for fire originating in this source. But an argument favorable to this construction is deduced from the fact, that with the word fire, is associated the “ dangers of navigation,” which it is supposed mean nothing more than those dangers of navigation which in law are set down to inevitable accident, or, as it usually called, the act of God. As it is unnecessary, I shall express no opinion as to the meaning of these words. If this be the necessary interpretation of them, of course they can receive no other construction ; but it does not follow that we are to restrict the word fire to a limited sense, when it usually has a more enlarged signification — words in construction are to receive their usual signification, unless it appears that they are used in a different sense. In common parlance, fire comprehends every kind of fire, without reference to the physical agencies by which it is produced ; whether it be communicated by a torch, or lightning, or the furnace of a steam engine, or arise from self-combustion, or any other cause. By the statute 26 Geo. 3, c. 86, it is provided that the owner of a ship shall not be liable for a loss sustained by “ any fire happening on board such vessel.” In Abbott on Shipping, 259, it is said “ in this clause the master is not mentioned, and therefore it may be doubtful whether his responsibility is in this case removed by the statute ; but the insertion of the word fire in the modern bill of lading, has certainly removed it.” This shews pretty clearly, that the insertion of the word fire, in bills of lading, was common when this work was written, and in *305 the opinion of the author included any fire, without reference to the cause which produced it.
But it has been said, it must mean only such fire as originates from the steam engine — the propelling power used on this boat — because, in any other sense, it would be without meaning, as fire in wagons, ships, or river boats, other I; than steamboats, could never occur without negligence, from i which it seems no special contract can exempt a carrier.' | I admit that in such cases, fire could seldom occur, where ordinary prudence was used to prevent it; but cases may arise, in which there would be no' negligence in the carrier. Most of the cases in which a carrier can claim exemption from liability, under an exception such as is contained in this bill of lading, will be cases of steamboats; yet I do not see any reason for restricting the generality of the term, to' that particular kind of fire. It seems to me$ therefore, that under a bill of lading like that given in this case, is included all such losses as have happened by fire, without fault or negligence on the part of the carrier — * but in the same watchful spirit by which, at common law, a carrier was made liable for all losses except those which arose from the act of God, or the public enemies, I would hold him to strict proof of diligence and care, in avoiding any loss to the owner of the goods, by so dangerous an element as fire.
I come now to the consideration of the last question made in this case. On whom does the onus probandi lie ? The defendants rested their case on the proof merely that the cotton was burnt; thus bringing themselves within the letter of their bill of lading; This, they contended, was sufficient, unless negligence and want of care was proved on the other side. Care and diligence are essential ingredients in the contract of every carrier,whether his contract be general or limited, and I have already had occasion to say that the exception in the bill of lading means such fire as that care and diligence which they were bound to use could not avoid. In most cases of bailment, the bailee is chargeable, not by the delivery of the goods, but by reason of negligence and want of care, and in such cases it may be that negligence *306 must be alleged and proved; but even in such cases, I should think, the bailee should be held to proof of the facts and circumstances under which the loss occurred, as was said in the case of Clarke vs. Spence, 10 Watts R. 335. But in relation to common carriers and inn-keepers, it is very clear that the owner is bound to prove no more than that the goods were delivered to the carrier, and that he had not delivered them to the consignee. The onus of proving what will excuse his non-delivery, must be made by the carrier. Story on Bailm. § 529. This is true, beyond dispute, as to carriers generally, under the common law, but the argument to take this case out of the general rule is, that the exception of “ fire” in the bill of lading changes the general into a special liability. This, to some extent, is true. The carrier’s liability is diminished to the extent of the exception, but his character is not changed. He is still a common carrier, so long as any of the incidents and liabilities of that employment remain. He is a public carrier for hire, and the exception in the bill of lading does nothing more than excuse him where the loss has happened by fire without fault or negligence on his part. If, in the bill of lading, losses by the “ public enemies” and inevitable accidents were excepted, that would not cast the burden of proof on the plaintiff that the loss did not occur from these causes ; and I am unable to perceive any reason why a different rule should prevail, where any of the risks of the carrier are excepted by the contract of the parties. Judge Story, in his treatise on bailments, deduces a somewhat different conclusion as the result of the authorities at § 573, but in the next section he says that “in cases of special limitations of responsibility by notice, or otherwise, the carrier must prove that the loss has arisen from other perils, against which he did not insure;” and in the cases of bailments wherein he says the onus is on the owner, he states it as the preponderance of authority, and not as undisputed law. At § 454, he quotes, without disapprobation, what was said in the recent Pennsylvania case of Clarke vs. Spence, in relation to the proof in the case of wharfingers and ware-housemen, in which Rogers, J. said, “ to throw the proof *307 of negligence on the bailor, it is necessary to shew by clear, satisfactory proof, that the goods were lost, and the manner they were lost. All that the bailor has to do in the first instance, is to prove the contract and delivery of the goods, and this throws the burden of proof that they were lost, and the manner they were lost, on the bailee, of which we have a right to require very plain proof.” This, it seems to me, is in conformity with reason and plain sense, and what was said by the learned counsel who argued this case for the defendants, that the rules which are to govern contracts of such extensive use, should be plain and founded on well settled principles. The general liabilities of common carriers are very well known, both to the profession and those who engage in that employment; what shall be proved, and by whom, is equally well understood. All the analogies of the law lead to the conclusion that the burden of proof lies on him who should best know what the facts are. If the entire burthen of proof of negligence be thrown on the bailor, as is contended for, how can he make it ? The loss, and the manner of the loss, are frequently known only to the carrier and his servants. The owner knows nothing about it, and if the proof lies on him, he, of necessity, must resort to the agents and servants of the carrier; the very persons, generally, by whose negligence the goods have been lost; whose feelings, wishes, and interests are all against the owner, and on the side of their employers. In New York, in the case of Platt vs. Hibbard, 7 Cow. 500, even in the case of a depositary for hire, it was held that the onus was on the bailee, to shew that the injury did not happen in consequence of any neglect of his. The same opinion seems to be entertained in Pennsylvania, as appears by the case of Clarke vs. Spence, before quoted; and although authority may be found for a contrary doctrine in English cases, yet I doubt if, in any of these, the bailee ever rested his case, without proof of the facts and circumstances attending the case, so as to enable the jury to decide on the fact of negligence. In the great commercial State of New York, it has been decided, on considerations of public policy, that a carrier cannot limit his responsi *308 bility as an insurer by giving notice, and, of course, by a special contract; Cole vs. Goodwin. This court is not disposed to lay down so rigid a rule as this, but whilst we extend to the carrier the privilege of limiting his liability, by adding to those exceptions for which the common law excuses him, we must not change the general law in relation to the onus of proof, so as to put the owner entirely at the mercy of the carrier and his servants, which, I apprehend, we should do, if we were to hold that proof that the goods were burnt, shall excuse the carrier, unless the owner can prove that the fire originated in negligence, which he could not do in one case out of a hundred, Why, in an ordinary case against a carrier, is he bound to prove that the loss arose from public enemies or inevitable accident % The reason is given with great perspicuity by Best, C. J. in Riley vs. Horne, 5 Bing. 217. “ When goods are delivered to a carrier, they are usually no longer under the eye of the owner; he seldom follows or sends any servant with them to the place of their destination. If they should be lost or injured by the grossest negligence of the carrier or his servants, or stolen by them, or by thieves in collusion with them, the owner would be una* ble to prove either of these causes of loss ; his witnesses must be the carrier’s servants, and they, knowing they could not be contradicted, would excuse their master and themselves.” In Roberts vs. Turner, 12 Johns. R. 232, Spencer, J. said, the carrier “ is held responsible as an insurer of the goods, to prevent combinations, chicanery and fraudand in Hollister vs. Nowlen, Bronson, J. said, if the remedy of the owner depend on proof of negligence or fraud, he must make out his right to recover “ by calling the very men whose recklessness or frailty has occasioned the injury.” All these reasons apply with equal force to a case of limited liability. In cases of fire, if the proof lay entirely on the owner, he would labor under the same difficulties, and would have to resort to the same questionable sources of proof, and would labor under the disadvantage that he could not impeach the witnesses, although their characters were ever so bad, as they would be his own witnesses. It was noticed in the argument, *309 that the plaintiff had declared on the contract, and alleged that the goods were lost by the negligence of the defendants. I do not think this varies the case. In Ch. Pl. 2 vol. 365, there is a precedent of a case against the master of a ship, on a bill of lading, in which was inserted the exception “dangers of the sea.” These words are well understood, and mean nothing more than storms, tempests, and what is included in the idea of inevitable accident. The declaration, after stating the delivery, according to the bill of lading, goes on to state the non-delivery, “ although not prevented by the dangers of the sea,” and that the goods were lost by the mere carelessness, negligence and want of care of the defendant. This is the only precedent in Chitty against a carrier in assumpsit on a bill of lading. No one, I suppose, would infer from this that the owner was bound to prove that the goods were not lost by the “ dangers of the sea.”
Upon a full examination of the principles on which this case must be decided, I am of opinion that the proof that the cotton was burnt, was not sufficient for the defendants. They were bound to shew, not only that the cotton was destroyed by fire, but the circumstances under which the destruction took .place — that the jury might judge whether the accident was unavoidable, or the effect of negligence and want of care. This decision is in accordance with the French law, as laid down by Pothier, and with Scottish law, as stated by Bell, referred to in Story on Bailm. § 411.
The only particular in which, it seems to me, there was error in the charge of the circuit court, was, that the word “ fire,” in the bill of lading, was restricted to fire arising from the steam engine ; but this error did not affect the verdict, as no evidence whatever was given as to the origin of the fire. Upon the evidence, we think the verdict was right, and the motion is dismissed.
Wardlaw, J. concurred.
In the case of Chambers & Co. against Hilliard & Brooks;
Evans, J.
also delivered the opinion of the court, as follows:
*310 In this case, the exception in the bill of lading was, “unavoidable accidents of navigation and fire excepted.” The words “ unavoidable accidents,” must be taken in connection with both the substantives, navigation and fire, which, in the view taken in the case of Swindler against the same defendants, would mean the same thing, without the additional words. In this case, the defendants went into evidence of the facts and circumstances attending the burning of the cotton. The jury heard all that could be proved by both parties, and, by their verdict, have exculpated the defendants from the charge of negligence. I do not perceive that the verdict is unsupported by the evidence, to such an extent as to authorize another trial, and the motion is therefore dismissed.
Wardlaw and Frost, JJ. concurred.